## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

COURTNEY GREEN,

Plaintiff,

v.

ANTONIO SANTIAGO
ROBERT MARTIN
JOHN DOE 1/LT. BELLAMERE
JOHN DOE 2/ C.O. AYOTE
JOHN DOE 3/ C.O. STREETER
JANE DOE/ A.R.C. KING

Defendants.

3:15-CV-1553 (CSH)

**DECEMBER 14, 2016**

## INITIAL REVIEW ORDER AND RULING ON PLAINTIFF'S SUPPLEMENTAL PLEADING

**HAIGHT, Senior District Judge:**

Plaintiff Courtney Green ("Green"), incarcerated in a Connecticut prison and appearing *pro se*, has filed a Complaint [Doc. 1], an Amended Complaint [Doc. 7], and a Supplemental Pleading [Doc. 8]. These submissions contain a number of allegations by Green which assert claims under 42 U.S.C. § 1983 against several state prison officials.

The Defendants identified by the initial Complaint are Warden Antonio Santiago; Deputy Warden Robert Martin; Lieutenant Bellamere, also identified as John Doe #1; Correctional Officer Ayote, also identified as John Doe #2; Correctional Officer Streeter, also identified as John Doe #3; and Administrative Remedies Coordinator Michelle King, also identified as Jane Doe.

The Amended Complaint adds as Defendants Correctional Officer Cooley, also identified as John Doe #4; Correctional Officer Murphy, also identified as John Doe #5; Correctional Officer Donolfio, also identified as John Doe #6; and Deputy Commissioner Monica Rinaldi.

The Supplemental Pleading seeks to add Counselor Supervisor Vazquez; Administrative Remedies Coordinator Kimberly Daly; and District Administrator Peter Murphy as Defendants.

All Defendants are named in their individual and official capacities and were employed at Corrigan-Radgowski Correctional Institution ("CCI") where Green was previously an inmate at the time of the allegations.

This Ruling begins with, and consists principally of, the Court's *sua sponte* review of Green's pleadings, a review mandated by the Prison Litigation Reform Act of 1996 ("PLRA"), 28 U.S.C. § 1915A.

## I.   INITIAL REVIEW OF THE AMENDED COMPLAINT

28 U.S.C. § 1915A directs federal district courts to consider all prisoner civil complaints against governmental actors, and dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b)(1),(2).

A district court's *sua sponte* dismissal of a prisoner's complaint under § 1915A is reviewed *de novo* by the court of appeals.  *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  Where the district court has dismissed for failure to state a claim, the Second Circuit has said that "we accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.  We must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Id.* (citations and internal quotation marks omitted).

At the district court level, the district judge's § 1915A review of whether a complaint "fails to state a claim upon which relief can be granted" is guided by the Federal Rules of Civil Procedure,

as interpreted by Supreme Court and Second Circuit decisions whose principles have become familiar. A *pro se* complaint is adequately pled if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). The Court must accept as true all well-pleaded and non-conclusory factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations "'state a claim to relief that is plausible on its face.'" *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). And in *Larkin,* in the § 1915A context, the Second Circuit took care to cite approvingly and quote from *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) that: "We will not affirm the dismissal of a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him to relief." *Larkin*, 318 F.3d at 139.

The Court will apply these standards in conducting its initial review of any claims asserted by Green. The Court begins with a recitation of the factual allegations contained in these pleadings.

A.    <u>Factual Allegations</u>

Green's Amended Complaint [Doc. 7], filed on January 22, 2016, is the operative Complaint

considered by this Initial Review Order.[1]  The factual allegations contained in this pleading are recounted herein, recited in the light most favorable to Green.  They describe four separate strip searches conducted by officers of CCI when Green was incarcerated there.

1.  **Count One - August 2015 Search**

On August 27, 2015, during an "institutional facility shakedown," Green was ordered to the gym with the other inmates in his housing unit, specifically the top tier of that unit.  Am. Cmplt., Count One ¶ 1.  Green was initially ordered to step out of his cell and was "pat searched," *id.*, then directed to the lower sallyport, aligned with other inmates by cell number, and moved to the gym escorted by Captain Griffin.  The inmates were informed that their cooperation was expected as there was a facility emergency and that inmates who did not cooperate would be sent to the restrictive housing unit.  Defendant Bellamere supervised the inmates and the subsequent searches.

Two correctional officers began to strip search the inmates two at a time in two bathroom stalls.  This process was slow and to expedite the process, Defendant Ayote ordered Green and two other inmates into an adjacent room with windows and a wall-mounted camera to be strip searched.  The windows and lack of dividers permitted other inmates and officers to view the search.  Green complained about the arrangement to Defendant Streeter, who told Green that he would be sent to restrictive housing if he failed to comply with the search.  Green noted that another inmate in the room only a few feet away and several inmates seated on the bleachers in the gym looked at his buttocks and genitals.  Defendant Bellamere was standing at the entrance of the gym and fully aware

---

[1] Green filed an Amended Complaint [Doc. 7] prior to this Court's initial review of his original complaint and prior to ever serving the original complaint.  The Amended Complaint adds three counts based on three other strip searches in addition to Green's Complaint [Doc. 1], which alleged one strip search, the earliest of the four now complained of in the Amended Complaint.

of the actions of Defendants Ayote and Streeter, and Defendant Bellamere failed to supervise the searches conducted by Defendants Ayote and Streeter.

After the searches were completed, Green and the other inmates were seated on the bleachers when Defendant Martin and Captain Williams came into the gym. Inmates then asked about their ability to take showers. At this time, Green complained about the manner in which the search was conducted to Defendant Martin, who initially responded with indifference, stating that when he was in the military he had to shower with and in front of other men. He later agreed with Green and assured the Green that these searches would not happen again.

The following day, Green wrote to Defendant Santiago about the search. He did not receive a response and considered that to violate Administrative Directive 9.6. Green then filed a grievance, which was returned to Green signed by Defendant King, with the designation "compromised," signifying that the complaint had sufficient merit to warrant the modification of an existing decision. Green did not participate in the modification of any search procedures, and the search caused him a great deal of emotional distress, given the facts that other inmates witnessed it and it was recorded on camera. Green alleges that Defendant Santiago did not comply with the Prison Rape Elimination Act and failed to prevent these types of incidents from occurring.

### 2. **Count Two - October 2015 Search**

On October 22, 2015 at 3:45 a.m., Green alleges that he was notified by the unit officer that he had to report to the admitting and processing area for a court transfer. He proceeded to the area and arrived there around 4:00 a.m. Defendant Cooley then requested that he enter the strip room, but a noise from outside disrupted the strip search. Defendant Cooley instructed Green not to strip, went to check on the noise and returned with three other inmates who were also going to court.

Defendant Cooley requested that they also enter the strip room and be searched at the same time as Green. Green expressed his displeasure to Defendant Cooley at being exposed to a room of strangers within an arms length distance of each other in a "very confined room, designed to strip one individual at a time." Am. Cmplt., Count Two ¶ 5. Defendant Cooley ordered Green to strip in front of the three other inmates. After the incident, Green wrote to Defendant Martin and never received a response from Defendant Martin. Green exhausted his administrative remedies and received a returned grievance from Defendant King on December 4, 2015, which expressed that the disposition was "compromised," again meaning that some modification of the existing decision regarding the search was warranted.

3.    **Count Three - November 2015 Search**

On November 5, 2015, Green returned to CCI at about 8:00 p.m. from a court transfer and was placed in a holding cell with seven other inmates who were waiting to be readmitted and processed. Defendant Murphy requested that four inmates, including Green, follow him to the strip room. Once there Defendant Murphy requested that all four inmates strip; Green complied with the order. Defendant Murphy also directed Green to open his mouth, raise his hands, and bend at the waist so that his buttocks could be checked; Green complied with his orders in full view of the other three inmates in a room designed for the search of one individual at a time. Green wrote to Defendant Martin about the search and Defendant Martin did not respond, which prompted Green to write to Defendant Rinaldi on November 13, 2015 explaining the searches he had been subject to and how Defendants Martin and Santiago had not intervened. On November 23, 2015, Defendant Rinaldi responded to Green and on November 24, 2015, Defendant Martin also wrote to Green. Green exhausted his administrative remedies and Defendant King explained that she concurred with

Defendant Martin and that corrective action was taken.  Green was not allowed to participate in the resolution of his grievance.

4.     **Count Four - December 2015 Search**

On or about December 2, 2015, at approximately 9:00 a.m. during a "matrix shakedown" in his unit, Green and his cellmate were ordered to stand up by Defendant Donolfio.  Am. Cmplt., Count Four ¶ 1.  Green faced Defendant Donolfio while his cellmate faced the window.  Defendant Donolfio ordered Green to strip; Green requested that he do so privately without his cellmate there but Defendant Donolfio refused Green's request.  Green expressed concern that his cellmate could see his body through a reflection of the window, which had a white film on it to prevent the inmates from seeing outside.  However, Green complied with the orders.  Green complained again to Defendant Martin and never received a response.  Green exhausted his administrative remedies and the grievance was disposed of as "compromised."  Defendant Martin notified Green in mid-December 2015 that his request to preserve video from all four incidents "has been completed as requested by the plaintiff."  Am. Cmplt., Count Four ¶ 9.

B.     Discussion

Green contends that Defendants have violated his Fourth, Eighth and Fourteenth Amendment rights and have not complied with Administrative and Unit Directives.  Green also references the Prison Rape Elimination Act in his Amended Complaint.

1.     **Sovereign Immunity for Official Capacity Claims**

Green has named all Defendants in their individual and official capacities, but he seeks only money damages.  The Eleventh Amendment divests the Court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state

has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *Id.* at 169 n.17; *see also Quern v. Jordan*, 440 U.S. 332, 341-45 (1979). Nor has Green alleged any facts suggesting that Connecticut has waived this immunity.

Accordingly, any and all claims against the Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1), (2). *See Al-Bukhari v. Dep't of Corr.*, No. 16-205, 2016 WL 730703, at *3 (D. Conn. Feb. 23, 2016) (dismissing claims against an individual in his official capacity based on sovereign immunity).

2. **Section 1983 Claims Against Defendants in Their Individual Capacities**

Green also asserts each of these § 1983 claims against all Defendants in their individual capacities, again, seeking only monetary damages. Specifically, Green alleges that each of the four searches violated his Fourth Amendment right to be free from unreasonable searches; his Eighth Amendment right to be free from cruel and unusual punishment; and his Fourteenth Amendment due process and equal protection rights as well as violations of certain administrative policies and directives. The Court will address each of Green's claims in turn.

a. *Fourth Amendment Claims*

Green argues that the searches violated the Fourth Amendment which, in the prison context, proscribes unreasonable searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979). The Fourth Amendment "'protects individual privacy against certain kinds of governmental intrusion' . . . and it is well-established that its protections extend to prisoners." *Holland v. City of New York*, No. 14-5517, -- F.3d --, 2016 WL 3636249, at *7 (S.D.N.Y. June 24, 2016) (quoting *Katz v. United States*, 389 U.S. 347, 350 (1967)). "The test of reasonableness under the Fourth Amendment is not capable

of precise definition or mechanical application" and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Courts must consider the scope of the particular intrusion, the manner in which the search is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*; *see also Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (reiterating that courts must evaluate searches of inmates under the four *Bell* criteria). Moreover, in *Bell*, the Supreme Court reiterated that "[t]he searches must be conducted in a reasonable manner." 441 U.S. at 560.

The Second Circuit recognizes that inmates retain a "limited right to bodily privacy," and "'[a] strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body is a serious invasion of privacy,'" *Harris* 818 F.3d at 58 (quoting *Florence v. Bd. of Chosen Freeholders*, 132 S.Ct. 1510, 1526 (2012) (Breyer, J., dissenting)). Courts have nevertheless upheld strip-searches as reasonable security measures even when probable cause for the searches was absent as long as the searches were related to legitimate penological or security interests. *See, e.g.*, *Florence,* 132 S. Ct. at 1514, 1523 (upholding a strip-search procedure applied during intake process at prison facility to detainee arrested for minor offense was reasonably related to need of the prison facility to maintain security and did not violate Fourth or Fourteenth Amendments); *Bell*, 441 U.S. at 558-60 (holding visual strip-searches of inmates' body cavities after contact visits with person from outside facility to be reasonable in light of the "serious security dangers" in prison, together with the "common . . . occurrence" of the "[s]muggling of money, drugs, weapons, and other contraband"). Importantly, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such

-9-

matters." *Florence*, 132 S. Ct. at 1517 (internal quotation marks and citations omitted).

Numerous district courts in this Circuit have held that accusations of humiliation and embarrassment caused by strip searches, on their own, do not state a claim under the Fourth Amendment, specifically recognizing that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional." *Smith v. City of New York*, No. 14-5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (collecting cases); *see also Dixon v. Santiago*, No. 15-1575, 2015 WL 9582729, at *2-3 (D. Conn. Dec. 30, 2015) (collecting cases). Courts have repeatedly "acknowledged the degree to which strip searches may humiliate and 'invade the personal privacy of inmates,' and nonetheless upheld the use of strip searches where they further the legitimate interest of discovering contraband." *Walker v. Ponte*, No. 14-8507, 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) (quoting *Bell*, 441 U.S. at 560). A plaintiff must allege facts that suggest these searches did not serve any legitimate penological purposes, or that each search was specifically "designed to intimidate, harass or punish." *See Davila v. Messier*, No. 13-81, 2014 WL 4638854, at * 6 (D. Conn. Sept. 17, 2014); *see also Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd* 346 F. App'x 18 (2d Cir. 2002). For example, when two strip searches are conducted close in time and the inmate had no opportunity to obtain contraband after the first search, then the second strip search may be unreasonable and unconstitutional because the inmate lacked an opportunity to obtain contraband in the time in between the searches. *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983); *Jean-Laurent*, 438 F. Supp. 2d at 323.[2]

_____

[2] In addition, the Fourth Amendment has generally been interpreted to preclude cross-gender strip searches absent an emergency or exigent circumstances. *See Harris*, 818 F.3d at 63. Although Green states that the first search was recorded on the wall-mounted cameras, he does not allege that any female staff viewed or had access to the recording or that any female officers

-10-

These decisions do not alter the Court's principle expressed in *Bell* that the manner in which the search is conducted must still be reasonable.  *Bell*, 441 U.S. at 560; *see also Murray v. Bushey*, No. 04-00805, 2009 WL 498144, at *5 (N.D.N.Y. Feb. 26, 2009) (holding that plaintiff stated a Fourth Amendment claim despite the legitimate penological goal evident from his complaint because the search was conducted in an "unreasonable manner" as it was conducted without permission from a higher ranking officer, in front of other inmates, and under filthy conditions).  *Florence* reiterates the principle that where there is substantial evidence that officials have exaggerated a response to a legitimate penological concern and their "policies are an unnecessary or unjustified response to problems of jail security," the search may be unreasonable despite its initial justification.  132 S. Ct. at 1514, 1517.  Thus the simple recitation that a search had a penological justification, even if accurate, does not end a court's inquiry in all instances.  *See, e.g.*, *Williams v. City of Cleveland*, 771 F.3d 945, 951-52 (6th Cir. 2014).  Notwithstanding that justification, if the search is conducted in a particularly invasive or unnecessarily humiliating manner it may be condemned as unreasonable, in the totality of the circumstances.

Green has made sufficient allegations that the officials may have exaggerated their response to legitimate security and penological concerns with respect to three of the four searches described in his Amended Complaint.  These three searches, at least as conducted in the manner alleged by Green, may have been conducted in a manner designed to intimidate, harass or punish Green and conducted in an unreasonable manner in light of each situation.  As such, the Court concludes that, at least at this preliminary stage, Green has stated a valid § 1983 claim based on the violation of his Fourth Amendment rights by the first, second, and third searches.  *See Bell*, 441 U.S. at 559-60;

---

or inmates viewed any of the searches as the searches occurred.  For this reason, the Court does not address any claims based on cross-gender viewing related to the searches at issue.

*Murray*, 2009 WL 498144, at *5.

With regard to the first search, Green alleges that he was "pat searched" and then directed to the gym where the strip searches occurred. It appears that he was under constant supervision and guard while being transported to the gym. Although the searches were conducted in the midst of an "emergency" according to Green's Amended Complaint, the penological justification for the second full strip search may have lessened by the time it was conducted in light of the fact that an earlier, close in time, pat search had already been conducted. *See Hodges*, 712 F.2d at 35-36; *Jean-Laurent*, 438 F. Supp. 2d at 323. Moreover, the manner in which the strip search was conducted may have been wholly unreasonable. Green alleges that other inmates were searched in private bathroom stalls, but to "speed up the strip process" he and other inmates were ordered to a large room with no dividers or partitions to be strip searched in full view of other inmates, officers, and cameras. The strip search was conducted within a few feet of another inmate who stared at Green's genitalia. It is also unclear from Green's complaint that the emergency required taking this additional step. This search, as alleged by Green, could be unreasonable.[3] *See Bell*, 441 U.S. at 559-

---

[3] The Court recognizes that this district has previously reviewed similar allegations regarding this same search made by another inmate in an initial review order. *See Dixon*, 2015 WL 9582729, at *1. In *Dixon*, the court dismissed the inmate's monetary claims on the basis of qualified immunity; however, the inmate's claims regarding declaratory and injunctive relief were allowed to proceed on the basis that a strip search in front of other inmates could be unreasonable and a violation of the inmate's Fourth Amendment rights. 2015 WL 9582729, at *3-4. This Court reaches a different result here, given Green's additional allegations regarding the pat search and the manner in which the search was conducted. Moreover, given these allegations, the Court does not at this stage believe a determination can be made that Defendants are entitled to qualified immunity. Clearly established law at the time of the searches recognized that searches conducted without legitimate penological purposes or designed to intimidate, harass or punish were unreasonable and unconstitutional. *See George v. City of New York*, Nos. 12-6365, 13-3511, 13-3514, 2013 WL 5943206, at *10-11 (S.D.N.Y. Nov. 6, 2013) ("An unbroken line of authority in the Supreme Court and the Second Circuit has repeatedly affirmed that prison authority actions are not entitled to deference—and may be held unconstitutional—whenever they are not undertaken pursuant to any legitimate penological goal,

-12-

60; *Murray*, 2009 WL 498144, at *5.

The second search, as alleged by Green, occurred prior to a court transfer, taking place in a room designed to strip one individual at a time and with three other inmates and Defendant Cooley present. Green alleges that he was an "arms length" distance from the other inmates and that he was singled out by Defendant Cooley after he complained about the manner of the search.

Similarly, Green alleges regarding the third search, that he and three other inmates were singled out of a group of inmates returning from court by Defendant Murphy for a group strip search. The search occurred again in a room designed for the search of one individual at a time and Green was singled out for a search of his buttocks in front of the other three inmates. Although searches prior to and after a court transfer may be justified in the search for contraband, *see Smith*, 2015 WL 3929621, at *2 (recognizing that searches conducted after a contact visit or prior to transport away from the facility are "situations where the legitimate purpose of preventing the import or export of contraband is clear"), the manner in which both of these searches were conducted could be unreasonable designed to intimidate, harass or punish, and thus, the search could be a violation of Green's Fourth Amendment rights. *See Bell*, 441 U.S. at 559-60; *Murray*, 2009 WL 498144, at *5. Finally, with regard to the fourth search, it is well-settled that it is reasonable for a correctional facility to conduct random searches of inmates' cells and persons. *See Israel v. City of New York*, No. 11-7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) ("The Supreme Court has held that 'random searches are essential to the effective security of penal institutions.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 529 (1984))); *see also Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-8314, 2011 WL 6057837, at *8-9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip

---

or are designed to intimidate, harass, or punish.")

-13-

searches of inmates, including body cavity inspections, do not violate the Fourth Amendment."). Green has not alleged that he was singled out in any manner as part of the search (in fact he pleads that Defendant Donolfio's order was that "one of the two occupants" should stand up and the other should face the window), that his cellmate actually viewed him during the strip search, or that the space he was strip searched in was confined or too small for the search. Green has only alleged that it was possible for his cellmate to view him, but at best, his cellmate viewed him indirectly through a reflection on a window, which had a white film on it preventing the inmates from viewing the outside. Green's cellmate was not facing him during the search and only Defendant Donolfio conducted the search. The search appears, as alleged, to be reasonably tied to furthering Defendant Donolfio's interests in finding contraband and, unlike the other three searches, the manner in which it was conducted furthered that interest and cannot be said to be unreasonable or exaggerated based on Green's allegations and the manner in which it was conducted.

The Court emphasizes that the Fourth Amendment protects against *unreasonable* searches and seizures and at this particular initial review stage it is unclear to the Court why Green must be subject to these types of strip searches if it was easily possible and practicable for Defendants to avoid these types of situations. *See Dixon*, 2015 WL 9582729, at *3 (allowing claims for injunctive and declaratory relief to go forward recognizing that strip searches in the view of or presence of others may be unconstitutional); *see also Williams*, 771 F.3d at 954 ("To state a claim, plaintiffs were required only to allege—rather than demonstrate—that the jail acted unreasonably."). It is well-recognized that strip searches are "'a serious invasion of privacy,'" *Harris v. Miller*, 818 F.3d at 58 (quoting *Florence v.*, 132 S. Ct. at 1526 (Breyer, J., dissenting)), and such an invasion must be balanced against each of the *Bell* factors in determining whether the search is reasonable, *see id.*

at 62-63.  Because the manner in which these searches were conducted, as alleged by Green, was not justifiable and may have been an exaggerated response or intentional misconduct by Defendants, Green has stated a viable Fourth Amendment claim as to the first three searches.[4]  The Court recognizes that humiliation on its own, from the presence of inmates, correction officers or cameras, has been characterized by other district courts in this Circuit as insufficient to state a viable claim. The Court does not disagree with these holdings.  However, Green's allegations here regarding the manner and justifications for these searches state more than just mere humiliation and are sufficient to survive this Court's initial review.  *See Murray*, 2009 WL 498144, at *5.

That is not to say that Defendants did not have valid reasons for conducting each of these searches in the manner that they did.  Defendants may certainly have had such justifications and these searches may ultimately prove to be reasonable.  However, that is not a matter for resolution based solely on the allegations in Green's Amended Complaint.  That is a matter that requires development of the factual record.  *See Williams*, 771 F.3d at 953, 955 (concluding that a complaint involving strip searches of detainees in the presence of other detainees stated a plausible violation of the Fourth Amendment, noting that "the jail may have had good reasons for conducting these procedures in the particular manner in which it did . . . [b]ut that is a matter for resolution either at trial or on summary judgment, not on the pleadings" (citation omitted)).  The Court notes that going

_____

[4] Indeed, as recognized by this district in *Dixon*, 2015 WL 9582729, at *3, and as Green asserts here, the Department of Correction's own administrative regulations make clear that "[a]n inmate strip search shall normally be conducted in an area out of view of individuals not involved in the search process."  State of Connecticut Department of Correction, Administrative Directive 6.7 (Aug. 15, 2014), *available at* http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0607.pdf (last accessed Dec. 12, 2016).  Although this guidance is certainly not itself determinative of unconstitutional conduct, it does demonstrate that officials should avoid conducting strip searches in the presence of others and should have reasonable justifications for doing so.  *See Dixon*, 2015 WL 9582729, at *3.

forward Green faces a significant burden in bringing these claims, because this Court is bound to defer to Defendants' judgment unless there is "substantial evidence" in the record that Defendants exaggerated their response with these searches or intended them solely to intimidate, harass or punish Green.  *See Florence*, 132 S. Ct. at 1517; *Jean-Laurent*, 438 F. Supp. 2d at 323.

Any § 1983 claims based on violations of the Fourth Amendment related to the fourth search are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[5]  However, Green's § 1983 claims based on violations of the Fourth Amendment regarding the first, second, and third searches state a claim upon which relief can be granted.  Those claims survive this § 1915A review, and may be the subject of further litigation in this action.

b.    *Eighth Amendment Claims*

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).  To succeed on an Eighth Amendment claim, a plaintiff "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted).  The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious.  *See Helling v. McKinney*, 509 U.S. 25, 35-36 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Subjectively, the plaintiff must show that the defendants acted with "know[] that inmates face a substantial risk of serious harm and disregard[] that risk." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

---

[5] This includes any claims of supervisory liability based on this search for Defendant Martin.

-16-

"Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim." *George*, 2013 WL 5943206, at *9 (citing *Frazier v. Ward*, 426 F. Supp. 1354, 1356 (N.D.N.Y. 1977)).  However, courts are generally reluctant to conclude that strip searches—even where an inmate alleges aggressive or inappropriate behavior—rise to the level of objectively serious enough to constitute an Eighth Amendment violation. *Id.* (collecting cases). With regard to searches where officers make contact with prisoners, "[a] correction officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). The "principal inquiry" a court must make "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-58.  It is clear that "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," but that such a search "may not be undertaken maliciously or for the purposes of sexually abusing the inmate." *Id.* at 258.

Courts in this Circuit have held that "a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective prong to support a claim based on cruel and unusual punishment under the Eighth Amendment." *George*, 2013 WL 5943206, at *10; *see also Little v. City of New York*, No. 13-3813, 2014 WL 4783006, at *3 (S.D.N.Y. Sept. 25, 2014) ("[C]ourts in this Circuit require the plaintiff to allege that the defendant engaged in egregious conduct during the strip search to state an Eighth Amendment violation.").  Indeed, allegations of far more serious misconduct by corrections officers than those

-17-

alleged in this case have consistently been held insufficiently serious to state a claim under the Eighth Amendment. *See George*, 2013 WL 5943206, at *9-10 (collecting cases, including cases where multiple instances of sexual abuse were not sufficient).

Here, Green's allegations are insufficiently serious to state an Eighth Amendment claim. Although he has properly raised Fourth Amendment claims related to three of the four searches based on irregularities in the conduct and manner of the searches, his allegations do not rise to the level of an Eighth Amendment claim. *See, e.g.*, *Murray*, 2009 WL 498144, at *5-6. The Court accepts for the purpose of this review that Green was in fact humiliated, embarrassed, and afraid, or that such searches could have been done differently with less exposure and humiliation. However, the Court is bound by the law and not every psychological discomfort a prisoner is forced to endure will amount to a constitutional violation. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Green's allegations are simply not sufficiently serious under the Eighth Amendment.

To the extent that Green is alleging that Defendant Murphy's search of his buttocks in the context of the third search was an improper touching and cruel and unusual punishment on its own, such allegations also fail to state a claim under the Eighth Amendment. Such a "brief instance of alleged sexual touching" is not "severe enough to constitute a serious deprivation of the plaintiff's basic human needs." *See Davila*, 2014 WL 4638854, at *5 (holding that a strip search occurring once where a defendant "used his hands to spread [a plaintiff's] buttocks one time" was too brief to constitute an Eighth Amendment violation). Again, the Court accepts that Green was humiliated by such a search, particularly in front of other inmates, but without more, the search in and of itself does not violate Green's Eighth Amendment rights.

Thus, Green fails to state any cognizable Eighth Amendment claims.  Any § 1983 claims based on violations of the Eighth Amendment are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

c.      *Procedural Due Process Claims*

Green alleges § 1983 violations based on several Fourteenth Amendment procedural due process claims.  To state a procedural due process claim, Green must allege that he has been "deprived of a protected liberty interest without due process."  *Batts v. Richards*, 4 F. Supp. 2d 96, 98 (D. Conn. 1998) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).

In Count One and Count Three, Green alleges that Defendant King did not permit him to participate in the disposition of his grievance before marking the grievance compromised.  He also alleges in Count Three that his rights were violated by Defendant King allowing Defendant Martin to participate in the resolution of the grievance procedure.  Further, he alleges in each count that Defendant Martin never responded to his grievances.

For the purpose of this review, I accept these allegations as true.  However, they do not state a viable constitutional claim.  Prisoners have no constitutionally protected right to have prison officials comply with grievance procedures or even to respond to grievances.  *See Kalican v. Dzurenda*, No. 12-1009, 2015 WL 1806561, at *6 (D. Conn. April 21, 2015) (no constitutional entitlement to have prison officials comply with grievance procedures or respond to grievances); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008)  ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievance does not in itself give rise to a constitutional claim."); *see also Fernandez v. Armstrong*, No. 02-2252, 2005 WL 733664, at *9 (D. Conn. March 30, 2005) ("This district has

-19-

previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.").

Because Green has no protected liberty interest in having correctional officials investigate his complaints or being involved in the grievance procedure and has not alleged that such procedures denied him a constitutionally or federally protected right, there is no basis for a due process claim. The § 1983 claims based on due process violations related to the grievance procedures are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Green also contends that Defendants Streeter, Santiago, Martin, and King failed to comply with Administrative and Unit Directives.  The failure to comply with state-created procedures does not in and of itself create a protected liberty interest that would implicate due process rights.  *See Fernandez*, 2005 WL 733664, at *10 (holding that "the Supreme Court has held that mandatory language in a prison directive or regulation does not in and of itself create a liberty interest" (citing *Sandin v. Connor*, 515 U.S. 472, 483 (1995))).  Green complains only that these Defendants failed to comply with the Administrative and Unit Directives, citing the directives and the failures to comply.  All claims against Defendants Santiago, Martin, and King for failure to comply with Administrative or Unit Directives are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[6]

d.    *Substantive Due Process Claims*

Green contends briefly that Defendant Cooley's "reckless behavior" violated his Fourteenth Amendment rights because he was subject to "unlawful and unconstitutional strip search[es]."  Am.

---

[6] Because these are the only claims asserted against Defendant King, the Court notes, for purposes of providing clarity to the parties, that all claims against Defendant King have been dismissed.

Cmplt., Count Two ¶ 10.  To the extent that Green is alleging a substantive due process violation against Defendant Cooley, such a claim is duplicative of his Fourth Amendment claim for an unreasonable search.  As such, this claim is dismissed.  *See Roman v. Velleca*, No. 11-1867, 2012 WL 4445475, at \*10 (D. Conn. Sept. 25, 2012) ("[S]ubstantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources." (citing *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)).

e.       *Prison Rape Elimination Act Claim*

In his complaint, Green alleges that Defendant Santiago failed to comply with the Prison Rape Elimination Act, 42 U.S.C. § 15602.  To the extent that he is attempting to assert a claim for violation of the statute, his claim fails as there is no private right of action under the Prison Rape Elimination Act.  *See Jones v. Forbes*, No. 16-14, 2016 WL 4435081, at \*3 (D. Conn. Aug. 19, 2016) ("There is nothing in the PREA [Prison Rape Elimination Act] that suggests that Congress intended to create a private right of action for inmates to sue prison officials for non-compliance with the Act.").  Green cannot bring an individual claim based on a violation of this Act's provisions.  Thus, any claim under the Prison Rape Elimination Act is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

f.       *Equal Protection Claims*

With regard to the first search, Green cursorily asserts that Defendant Streeter's search of him treated him unequally compared to other prisoners, *see* Am. Cmplt., Count One ¶ 10.  Green states he was mistreated based on the Eighth Amendment's protection of "equal treatment" for all prisoners.  No such protections exist under the Eighth Amendment, which provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Thus, the Eighth Amendment protects all persons from "cruel and unusual punishment," but does not require equal treatment of each prisoner. Moreover, this Court has addressed and dismissed any Eighth Amendment claims asserted by Green.

To the extent that Green is attempting to assert a § 1983 claim based on the Equal Protection Clause of the Fourteenth Amendment, it is also dismissed. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "This provision does not mandate identical treatment for each individual." *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009) (citing *City of Cleburne*, 473 U.S. at 439-40). To prevail on such a claim, a plaintiff must demonstrate that "he was treated differently from other similarly situated individuals and that the reason for this different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Green has not asserted or alleged that he is a member of a protected class or that he was mistreated based on some suspect classification by Defendant Streeter.[7]

Thus, the Court assumes that Green's equal protection claim is based on a "class of one theory." *See Muhmmaud*, 632 F. Supp. 2d at 179. To state such a claim, Green must allege that "(1) he has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment." *See id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Green has not alleged that he was intentionally treated differently by Defendant

---

[7] Importantly, "[m]erely being a prisoner is insufficient to place [one] in a suspected class." *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010) (internal quotation marks and citation omitted), *aff'd*, 449 F. App'x 51 (2d Cir. 2011) (summary order).

Streeter, that he was treated differently than any other similarly situated inmate or that there was not a rational basis for the treatment (in fact Green alleges a rational basis for the difference in treatment).  Without any such allegations, the Court is unable to conclude that Green has stated a viable equal protection claim.  *See id.*

In summary, any claim by Green alleging unequal treatment among prisoners is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C.      Conclusion

For the foregoing reasons, Green's § 1983 claims based on Fourth Amendment violations related to the first, second, and third searches (Counts One, Two and Three) of his Amended Complaint will proceed.  All other claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1),(2).

## II.      SUPPLEMENTAL PLEADING

Green has filed a Supplemental Pleading [Doc. 8] pursuant to Federal Rule of Civil Procedure 15(d) which seeks to add three Defendants, Kimberly Daly, Peter Murphy, and Vazquez and implicitly seeks to add claims based on conduct occurring after the last search in December 2015 at CCI.

Rule 15(d) permits the Court to allow a party to supplement its pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleadings to be supplemented," upon motion and reasonable notice to the other party, Fed. R. Civ. P. 15(d).  The Court will construe his Supplemental Pleading as a motion to supplement his Amended Complaint, and as a motion to add certain defendants.[8]

_____

[8] The Court recognizes that the motion was not duly noticed to Defendants, given that the Amended Complaint has not yet been served.  Because Green intended it as a motion, the Court will construe it as such and will address it now in the interests of judicial economy.  In any event, whether reviewed under 28 U.S.C. § 1915A as part of an initial review or as a motion to

A.      Standard of Review

A motion to supplement will be granted "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *see also Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2013).   "'Futility' under Rule 15 turns on whether the proposed pleading would state a claim upon which relief could be granted." *Kalimantano GmbH*, 939 F. Supp. 2d at 403-04 (quoting *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002)).   The Court will first detail Green's additional allegations and consider whether any claims asserted in the Supplemental Pleading state a claim upon which relief could be granted.[9]

B.      Additional Factual Allegations

Green alleges that on or about December 5, 2015, he was moved from his "F-pod" cell to a "C-pod" cell at CCI.   Supplemental Pleading at 3.   Green states that this was because he had complained to Defendant Martin about the December 2 strip search in front of his cellmate (described in Count Four of the Amended Complaint).   Green was then placed with a cellmate who was a pretrial detainee who was not yet sentenced, a placement Green asserts violated his right to equal treatment of inmates.   Green complained about this to Unit Manager Lieutenant Gillette, who did not respond, and Green then filed a grievance about the situation. Defendant King returned

supplement the pleadings, the standard is the same.  The Court will not allow at this point any claims to proceed that fail to state a claim upon which relief can be granted.

[9] Green's allegations in his Supplemental Pleading lack detail, are generally confusing and contradictory at times.  Consistent with the special solicitude afforded *pro se* parties, the Court has construed the pleadings to raise the strongest claims possible.  *See Sykes*, 723 F.3d at 403.

Green's grievance without disposition informing him that he needed to write to population management regarding a facility transfer.

Green was denied a facility transfer four times, but wrote again to Counselor Supervisor Vazquez (a supervisor in the population management unit) requesting a transfer and asking why he was previously denied the transfer.  Vazquez informed Green that placement is based on facility needs and security issues and that CCI offers jobs and programs Green inquired about.  Green filed a second grievance with Defendant King, refuting that CCI provides any "programmatic intervention," which would prevent Green from obtaining parole because he could not participate in "thresholds and people empowering people" as required.  Supplemental Pleading at 4.  Green asserts that the lack of these two programs prevented his early release.  Defendant King returned the grievance without disposition to Green.

Green resubmitted another grievance in January 2016, which stated that CCI is a "direct admissions facility," which means it is meant to house inmates in pretrial status or those sentenced to two years or less.  Supplemental Pleading at 5.  Green, however, is sentenced to 21 years, and therefore, should not be housed at CCI.  Administrative Remedies Coordinator Daly denied Green's grievance, returning it without disposition.  Green submitted this to Vazquez as well, who responded by attaching a note stating that decisions regarding prisoner classification are determined by the director of population management.  Green asserts that any classification decision is ultimately made by Defendant Santiago.  Daly denied Green's grievance, and Green appealed that decision to District Administrator Peter Murphy who upheld the denial.

Green then wrote directly to Defendant Santiago informing him that Daly had failed to properly address the grievance by not forwarding it to the director of population management.

Defendant Santiago never responded to Green's complaint, but Daly did respond, denying this oversight had occurred. Green's subsequent appeal exhausted the grievance procedure regarding Daly's alleged oversight.

Green alleges that there is a "Blue Code Affect" conspiracy occurring between those reviewing his grievances at CCI. Supplemental Pleading at 6-7. Specifically, he alleges that Defendants Murphy and Santiago, through an agreement with Murphy as a the final reviewer of the grievances, have conspired to uphold Defendant Santiago's determinations in the first instance. Green alleges that this denies the inmates a fair grievance process because grievances are never upheld and Defendant Murphy never overturns Defendant Santiago's decisions. Green believes the "Blue Code Affect" occurs when prison officials use their official positions to justify personal vendettas against prisoners by not upholding any grievances.

Green asserts that his transfer by Vazquez to CCI violated his right to be treated equally as compared to other "level 4 inmates" held at Cheshire, Garner and MacDougall Correctional Institutions. Supplemental Pleading at 7. At those institutions, such inmates are subject to "different rules, dress codes and institutional programming." *Id.* Green seeks only to add three defendants in his prayer for relief and neglects to request any specific relief based on his new claims asserted in the Supplemental Pleading.

C.   Discussion

Based on a liberal reading of the Supplemental Pleading, Green is asserting a number of § 1983 claims based on the constitutional violations related to: (1) retaliation based on his complaint regarding the in-cell search conducted in December 2015; (2) his housing with a pretrial detainee; (3) the fact that CCI does not offer programs similar to other correctional institutions depriving

-26-

Green the opportunity for early release; (4) the faulty grievance procedures at CCI; and (5) a conspiracy at CCI to consistently violate and undermine the grievance process for inmates. Because Green seeks only monetary relief in his Amended Complaint, the Court assumes that Green is again seeking only monetary relief for these claims.[10]

### 1.    Official Capacity Claims

As an initial matter, Green's monetary damage claims brought against Defendants (or the additional persons he seeks to add as Defendants) in their official capacity claims are futile. As discussed in Part I(B)(1) of this Ruling, these persons are entitled to immunity on any such claims. The Eleventh Amendment divests the Court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived this immunity or Congress has abrogated it. *Kentucky*, 473 U.S. at 169; *see also Al-Bukhari*, 2016 WL 730703, at *3. Because Congress has not abrogated this immunity for §1983 claims, Green's official capacity claims seeking monetary damages are futile. *See Kentucky*, 473 U.S. at 169 n.17.

### 2.    Individual Capacity Claims

The Court will next address any remaining Supplemental Pleading § 1983 claims by Green brought against Defendants and the three additional persons in their individual capacities. Again, the Court has liberally construed Green's Supplemental Pleading to raise the strongest claims he could assert based on the facts alleged.

---

[10] Subsequent to bringing this action, Green was transferred to Osborn Correctional Institution in Somers, CT. Doc. 9. Were Green to assert any claims for injunctive relief based on the lack of programs available to him while he was an inmate at CCI, such claims would, in any event, be considered moot and would also be futile. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." (citing *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989); *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986))).

a.      *Claims Based on Retaliation*

Green cannot, as currently alleged, state a claim for retaliation related to the exercise of his right to file a grievance related to the search of him in his cell at CCI in December 2015.  Courts must approach prisoner retaliation claims "with skepticism and particular care," in part because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).   In order to survive a motion to dismiss, and thus state a claim upon which relief can be granted (*i.e.* a claim that is not futile), a plaintiff asserting First Amendment retaliation claims must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a casual connection between the protected speech and the adverse action."  *Id.*  Because the filing of grievances is a constitutionally protected activity, Green meets the first prong of this test.  *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).   However, Green's allegations do not support the second prong of this test.

Green alleges that after he filed the grievance, complained about the search, and requested preservation of the video footage on December 2, 2015, he was moved to another unit at CCI in "C-pod" on December 5, 2015.  It is unclear based Green's Supplemental Pleading how this could be "adverse" action.  Green alleges no facts that describe how this transfer adversely affected him.  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Davis*, 320 F. 3d at 353 (quoting *Dawes*, 239 F.3d at 493) (internal quotation marks omitted).  Green

-28-

asserts only that in this new unit he was placed with a pretrial detainee, but he fails to allege any facts explaining how this action was adverse to him or that such a housing arrangement was unique to "C-pod."  Green also fails to allege any adverse action from his transfer to "C-pod" by not describing the differences between "C-pod" and the unit he was previously in at CCI.  Green asserts that CCI does not offer a number of programs that he requires and that other inmates are offered, but he fails to explain how at all this resulted solely from his presence in this new unit.  Instead, Green's allegations appear to apply to CCI as a facility and not specifically to his presence in this different unit.  Although "prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights," *see Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998), Green needed to allege that the transfer specifically constituted adverse action, not that his presence at CCI in general adversely affected him.

For these reasons, Green has failed to allege that any "adverse" action was taken against him sufficient to state a First Amendment retaliation claim.

b. *Claims Based on Housing with a Pretrial Detainee*

Green's claim based on violations of his constitutional rights because of his housing with a pretrial detainee are similarly futile.  The Second Circuit recently held that a sentenced inmate's claim that "Connecticut's housing of sentenced with unsentenced inmates violates his constitutional rights as a sentenced inmate" was unfounded and failed to state a claim upon which relief could be granted. *Edwards v. Erfe*, 588 F. App'x 79, 81 (2d Cir. 2015) (summary order).  The Second Circuit dismissed the inmate's reliance on a Fifth Circuit case, *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).  The Second Circuit distinguished *Jones* from a claim similar to Green's

-29-

because *Jones* only held that it was the *due process* right of pretrial detainees not to be housed indiscriminately with sentenced inmates and "not the reverse." *Id.* Importantly, a pretrial detainee cannot be punished (and therefore must bring Eighth Amendment-type claims as due process claims), but sentenced inmates can be punished so long as it is not cruel and unusual under the Eighth Amendment. *See id.* (citing *Bell*, 441 U.S. at 535 n.16). Therefore, the sentenced inmate in *Edwards* had to allege facts indicating that his housing with pretrial detainees rather than sentenced inmates amounted to cruel and unusual punishment. *Id.* Because the inmate did not do so, the Second Circuit held that he failed to state such a claim. *See id.*

Here, Green does not allege any specific harm to him resulting from his housing with a pretrial detainee. Instead, Green makes cursory and conclusory allegations that this amounted to "cruel and unusual punishment" in name only. In the absence of any such harm or any evidence at all of cruel and unusual punishment, Green cannot state any constitutional claims based solely on his housing with a pretrial detainee. *See Edwards*, 588 F. App'x at 81.

Similar to the Second Circuit in *Edwards*, this Court need not address whether CCI's housing policies violates the due process rights of pretrial detainees, because Green does not have standing to assert the rights of the pretrial detainees (including his former cellmate). *See id.* In any event, this district recently held that housing a pretrial detainee with a sentenced inmate does not, without more, violate the constitutional rights of the pretrial detainees. *Silvera v. Conn. Dep't of Corr.*, 726 F. Supp. 2d 183, 195-98 (D. Conn. 2010) (dismissing a pretrial detainee's due process claim when the detainee failed to allege that he was placed with the sentenced inmate as a punitive measure or that he suffered an injury on account of the arrangement); *see also Woodhouse v. Carroll*, No. 08-1092, 2010 WL 3023888, at *4-5 (D. Conn. Aug. 2, 2010) (citing *Silvera* and affirming that

although a pretrial detainee may prefer not to be housed with a sentenced inmate, that fact alone will not give rise to the level of a constitutional violation).

Moreover, to the extent Green is asserting an equal protection claim it would also be entirely futile based on the allegations in the Supplemental Pleading. Green alleges that as a sentenced inmate he was treated differently than other similarly situated sentenced inmates by being housed with a pretrial detainee. As explained *supra* in Part I(B)(2)(f), equal protection claims typically result from the fact that a person was treated differently because of his or her membership in a protected class. Green's claims do not allege any such treatment. Accordingly, Green, must be assumed to assert a "class of one" theory of equal protection. However, to assert such a claim, Green must "allege the existence of a comparator"—meaning that he must allege that someone similarly situated to him, specifically "*prima facie* identical," was treated differently. *See Silvera*, 726 F. Supp. 2d at 198-99 (internal quotation marks and citations omitted). Green makes no such allegations.[11] Green must also allege that "there was no rational basis for the difference in treatment," *see id.* at 198 (quoting *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004)) (internal quotation marks omitted), but his Supplemental Pleading makes clear that the decision was based on "facility needs and security issues"—a rational basis for the treatment. Supplemental Pleading at 4.

Thus, Green's claims based solely on his housing with a pretrial detainee fail to state a claim upon which relief may be granted.

---

[11] Green, again, asserts that this violates the "equal treatment" laws of the Eighth Amendment. As explained *supra* Part I(B)(2)(f), there is no such claim under the Eighth Amendment.

c.      *Claims Based on the Lack of Programs at CCI*

To the extent Green is asserting monetary damage claims resulting from his inability to participate in two programs while housed at CCI, such claims are also futile.  Prisoners do not have constitutional rights to conditional release or early release programs under federal law.  *See Brantley v. Armstrong*, No. 95-2530, 2000 WL 631395, at *3 (D. Conn. 2000) ("A prisoner has no constitutional or inherent right to be conditionally released before the expiration of his sentence." (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979)); *Bd. of Paroles v. Allen*, 482 U.S. 369, 373 (1987)).

Lawfully imprisoned inmates could have a protected liberty interest under the due process clause in being released on parole prior to the expiration of the inmate's sentence if such a right is guaranteed by state law.  *Id.* (citing *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980)). However, the statute governing parole in Connecticut does not include mandatory language, and consequently  does not create a protected liberty interest in parole.  *Id.*  (collecting cases); *see also Hicks v. Lantz*, No. 08-1012, 2009 WL 2869753, at *3-4 (D. Conn. Sept. 1, 2009) ("Connecticut statutes do not create a protected liberty interest in parole for Connecticut inmates.").  In addition, prisoners have no constitutional rights to a particular security classification.  *See Taylor v. Levesque*, 2005 WL 3050973, at *3-4 (D. Conn. Nov. 10, 2005) (recognizing that "the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action" and that "Connecticut inmates have no state or federally created liberty interest in their classification")*, aff'd*, 246 F. App'x 772 (2d Cir. 2007) (summary order).[12]  To the extent, Green is

---

[12] In addition, to the extent Green is attempting to allege an Eighth Amendment claim, because he has no constitutional or inherent right to be released prior to the expiration of his sentence, there is nothing cruel or unusual about requiring him to serve the full term of his sentence.  *See Smith v. U.S. Parole Comm'n*, 814 F. Supp. 246, 248 (D. Conn. 1993).  Thus, an

complaining about his classification inhibiting the programs that he is offered, such claims are also futile.

Because Green has no protected property interest in his parole, no constitutional right to parole, and has failed to allege any protected interest based on his entitlement to early release, he cannot assert any constitutional violations of due process based on the lack of programs at CCI.[13]

To the extent Green is asserting an equal protection violation resulting from his treatment as a level 4 inmate at CCI such a claim is also futile.  Again, the Court assumes that Green is asserting a "class of one" equal protection claim because he does not allege that his equal protection rights derive from membership in a suspected class.  *See Robles*, 745 F. Supp. 2d at 301-02.  Green, however, has failed, again, to allege that he was similarly situated to other level 4 inmates who received a different treatment.  *See Silvera*, 726 F. Supp. 2d at 198-99; *see also Robles*, 745 F. Supp. 2d at 302 ("'The failure to allege different treatment from a similarly situated class is fatal to an equal protection claim.'" (quoting *Assoko v. City of New York*, Nos. 06-1141, 05-10760, 2009 WL 1108745, at *4 (S.D.N.Y. April 24, 2009)).  He has also failed to allege any intentional acts taken by Vazquez or prison officials to treat him differently than other level 4 inmates at CCI or other facilities and that there was no rational basis for the treatment (again he has alleged that there was such a basis—the "facility needs and security concerns" of CCI).  *See Silvera*, 726 F. Supp. 2d at 198-99.  Accordingly, Green's equal protection claims are also futile.

Based on the foregoing, Green cannot on this Supplemental Pleading challenge the

---

Eighth Amendment claim would also be futile.

[13] Moreover, it is unclear from Green's allegations how at all he was harmed by the lack of these programs. For example, Green does not explain what the conditions of such a release are based upon or what was required for him to obtain it.

constitutionality of the lack of programs available at CCI, his transfer, or his classification as a level 4 inmate that may have somehow deprived him of those programs.  Any such claims are futile.

> d.    *Claims Based on the Grievance Procedures at CCI*

Green's claims regarding the grievance procedures are futile for the same reasons expressed in this Initial Review Order Part I(B)(2)(c).  To state a procedural due process claim, Green must allege that he has been "deprived of a protected liberty interest" without sufficient due process. *Batts*, 4 F. Supp. 2d at 98 (citing *Bedoya*, 91 F.3d at 351-52).  Prisoners have no constitutionally protected right to have prison officials comply with grievance procedures or even to respond to grievances.  *See Kalican*, 2015 WL 1806561, at *6; *Torres*, 2016 WL 1948806, at *4.  Moreover, unless a correctional official's action caused the denial of a constitutionally or federally protected right, the failure of a correctional official to comply with the grievance procedures is not cognizable in an action filed pursuant to § 1983.  *Fernandez*, 2005 WL 733664, at *9.  Green has no protected liberty interest in having correctional officials investigate his complaints or being involved in the grievance procedure and has not alleged sufficiently that the denial of his grievances resulted in the denial of a constitutionally or federally protected right.  There is no legal basis supporting a constitutional violation based on Green's allegations in his Supplemental Pleading.[14]

> e.    *Conspiracy Claims*

Green asserts that there is a conspiracy "within the grievance system" to systematically

---

[14] To the extent Green is attempting to assert additional constitutional violations pursuant to the Eighth Amendment for cruel and unusual punishment or pursuant to the Fourteenth Amendment's Equal Protection Clause, Green's Supplemental Pleading fails to state any such claim upon which relief can be granted.  His Supplemental Pleading contains no allegations about how the denial of his grievances resulted in harm to him, let alone cruel and unusual punishment.  In the same vein, he does not allege that any similarly situated inmates' grievances were treated differently.

-34-

violate the constitutional rights of inmates, including Green, at CCI.  To establish such a conspiracy under § 1983, Green must prove "(1) the existence of an agreement between two or more state actors (or a state actor and a private entity), (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal." *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 268 (D. Conn. 2012) (quoting *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 218 (D. Conn. 2001)) (internal quotation marks omitted).  However, Green's conspiracy claims are barred by the intracorporate conspiracy doctrine, and thus, are futile.

"[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted).  "The intracorporate conspiracy doctrine applies to claims of § 1983 conspiracy." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 467 (S.D.N.Y. 2012).  Even though "the Second Circuit Court of Appeals has not issued a decision specifically addressing the use of the intracorporate conspiracy doctrine in prisoner civil rights cases," courts "within the Second Circuit . . . have applied the doctrine to [such] claims." *Richard v. Dignean*, 126 F. Supp. 3d 334, 338-39 (W.D.N.Y. 2015) (collecting several cases).

There is an exception to the application of the doctrine when the individuals are "pursuing personal interests wholly separate and apart from the entity," *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (quoting *Bond v. Bd. of Educ. of the City of New York*, No. 97-1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999)) (internal quotation marks omitted).  For the exception to apply, a plaintiff "must also allege that [the defendants] acted other than in the normal course of corporate duties."  *Id.* (quoting *Girard v. 94th St & Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976)) (internal quotation marks omitted).  Green's Supplemental Pleading alleges only that the prison

officials have been acting in the normal course of their corporate duties. There are no allegations that such officials have been acting pursuant to any personal interests "wholly separate and apart" from CCI by denying grievances of the inmates.[15]

In summary, Green's Supplemental Pleading fails to adequately allege any § 1983 claims. Were these claims considered part of this action, the Court would be obligated to dismiss them pursuant to 28 U.S.C. § 1915A. Therefore, allowing the claims in the Supplemental Pleading to proceed would be futile. As such, Green's motion to supplement his Amended Complaint and add certain defendants is DENIED and his Supplemental Pleading is DISMISSED WITHOUT PREJUDICE. To the extent that Green can remedy the failures in his Supplemental Pleading noted by the Court in this Ruling, the Court will afford Green another opportunity to file an appropriate Supplemental Pleading seeking to add those specific claims and defendants. Green must do so within **thirty (30) days** of this Ruling.

## III.   CONCLUSION

Following this Court's review of Plaintiff's pleadings, and for the reasons stated, the Court makes this Order:

1.      Plaintiff's Amended Complaint is **DISMISSED** to the extent it seeks to plead (a) any claim against Defendants in their official capacities; (b) any § 1983 claims based on Fourth Amendment violations based on the fourth search (Count Four), and (c) any § 1983 claims based

---

[15] Although Green does allege that personal bias played into Defendants choices to deny grievances, without any more facts on what this alleged bias was, especially as applied to Green, the Court cannot conclude or infer that the exception would apply. Rather, Defendants were acting in the course of their duties by addressing the grievances and no interest "wholly separate and apart" from those duties justified their actions as alleged by Green.

on any Eighth Amendment and any Fourteenth Amendment violations.  Those dismissals are made pursuant to 28 U.S. § 1915A(b).

2.      Plaintiff's Amended Complaint § 1983 claims based on Fourth Amendment violations occurring as a result of the first, second, and third searches (Counts One, Two, and Three) **WILL PROCEED** against Defendants Antonio Santiago, Robert Martin, Lieutenant Bellamere, Corrections Officer Ayote, Corrections Officer Streeter, Corrections Officer Cooley, Corrections Officer Murphy, and Monica Rinaldi in their individual capacities.

3.      Construing Plaintiff's Supplemental Pleading as a motion to supplement the pleadings and a motion to add certain defendants, that motion is **DENIED** and the Supplemental Pleading is **DISMISSED WITHOUT PREJUDICE**.  To the extent that Green can remedy the failures in his Supplemental Pleading noted by the Court in this Ruling, Green may file another Supplemental Pleading seeking to add the specific claims and defendants.  Green must do so within **thirty (30) days** of this Ruling.

For the proper governance of the case, the Court also makes these additional Orders:

4.      The Clerk shall verify the current work address of Defendants Antonio Santiago, Robert Martin, Lieutenant Bellamere, Corrections Officer Ayote, Corrections Officer Streeter, Corrections Officer Cooley, Corrections Officer Murphy, and Monica Rinaldi with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order.  The Clerk shall report to the Court the status of that waiver request on the **thirty-fifth (35th) day** after mailing.  If any Defendant fails to return the waiver request, then the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity

-37-

and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

5.     The Clerk shall send a courtesy copy of the complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

6.     Defendants shall file their response to the Amended Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

7.     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

8.     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

9.     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

**It is SO ORDERED.**

 Dated: New Haven, Connecticut
            December 14, 2016

       _/s/ Charles S. Haight, Jr._
       **CHARLES S. HAIGHT, JR.**
       **SENIOR UNITED STATES DISTRICT JUDGE**